**Roosevelt GORDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68414.**

Court of Criminal Appeals of Texas,
En Banc.

June 8, 1983.

Von H. Shelton, Angleton, for appellant.

Jim Mapel, Dist. Atty. and Richard C. Stevenson, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for burglary of a building. Punishment, enhanced pursuant to V.T.C.A., Penal Code Sec. 12.42(b), was assessed at ten years.

In his only ground of error appellant contends the State was erroneously allowed to impeach him with a prior conviction over ten years old. As the State points out in its brief, at the punishment stage of the trial appellant admitted he was guilty of the offense. In *Brown v. State,* 617 S.W.2d 234, 236 (Tex.Cr.App.1981), it was noted that many evidentiary objections made at the guilt stage may be waived by such punishment stage testimony. See authorities cited in *Brown.* Appellant's admission of guilt at the punishment stage waived the objection asserted in his ground of error.

The judgment is affirmed.

TEAGUE, Judge, concurring.

The majority correctly states that under the law as it presently exists in this State, and because appellant admitted his guilt at the punishment stage of the trial, he waived the objection he had made at the guilt stage of the trial concerning the admissibility of the prior conviction for impeachment purposes.

It is now axiomatic in the law of this State that a defendant who testifies at the punishment stage of the trial, and during his testimony, either on direct or cross-examination, admits his guilt to the offense for which he had earlier pleaded not guilty, has, for all legal purposes, entered a plea of guilty without receiving any of the admonishments which usually go with such a plea. He suffers the consequences that a plea of guilty has, as to the preservation of any error that may have occurred during the guilt stage of the trial. The majority correctly refers to *Brown v. State,* 617 S.W.2d 234, 236 (Tex.Cr.App.1981), as authority for overruling the appellant's ground of error.

Let there be no mistake about the matter. The above rule of law is indeed a harsh one, and will usually prevent most defendants, in any kind of bifurcated criminal trial, from testifying at the punishment stage of trial, because they will fear that by testifying it may cause waiver of any error

which may have occurred during the guilt stage of the trial.

I personally would join four other judges of this Court and vote to abolish the rule of law that this Court has created, and overrule the cases cited in the above part of *Brown.* However, just recently in *Smyth v. State,* 634 S.W.2d 721 (Tex.Cr.App.1982), where I set out in my dissenting opinion many, if not all, of the cases applying the doctrine of curative admissibility and waiver of error to the defendant's claim of error because he had testified at the punishment stage of the trial and admitted his guilt, that same plea was made and rejected.

I, therefore, write this concurring opinion only to put defendants and their counsel on notice of what they may expect if the defendant decides to testify at the punishment stage of the trial, and during his testimony makes the equivalent of a plea of guilty to the offense for which he is on trial.

ONION, Presiding Judge, concurring in part and dissenting in part.

Appeal is taken from a conviction for burglary of a building; the punishment, enhanced by allegation and proof of a prior 1969 Texas conviction for possession of marihuana, was assessed by the jury at ten (10) years' imprisonment.

In his only ground of error appellant complains the court erred in allowing the State, over timely objection, to impeach him at the guilt stage of the trial with the prior 1969 conviction which was too remote to be used to affect his credibility as a witness via his own behalf.

At the trial Freeport Police Officer Garry Frick testified he lived at the Freeport Inn, Room 22 on October 10, 1980; that he received a reduced room rate for acting as a security officer for the Inn. About 2:30 or 2:45 a.m. on that above date, he was awakened by a noise sounding like a sliding door to the patio in Room 24. He knew the room to be vacant. As he exited his room into the hallway, appellant came out of Room 24. Frick told appellant he was a police officer and instructed him to "Freeze." Appellant threw a towel at Frick and started back into the room and ran into a wall. Frick then handcuffed appellant and took him to the manager's office.[1] An antenna cable was found in appellant's pocket. Upon returning to Room 22, Officer Frick found a television set belonging to the Inn on a bed covered with a blanket.

Wei Chuan Lin, owner of the Freeport Inn, testified the appellant was not a registered guest at the inn on October 10, 1980, and that Room 24 was vacant on October 9 and 10. He did not give appellant permission or consent to enter Room 24 or to take anything therefrom.

Testifying in his own behalf at the guilt stage of the trial, the 49-year-old appellant stated he went to the Freeport Inn on the time in question with a girlfriend and met a fellow named Gary or Danny, whom he had known for three years but whose last name was not known to him. Danny had rented Room 22 for himself and Room 24 for the appellant and gave him a key and a receipt showing he had paid $18.50 for Room 24. Appellant explained he and Danny were married men and often rented motel rooms for each other where they took their girlfriends. Appellant did not know what names Danny had used in registering for the rooms.

Appellant, his girlfriend and Danny sat in Room 22 and smoked marihuana and drank whiskey. Danny received a phone call from his wife or girlfriend and said he was expecting "company." Appellant and his girlfriend left. When he returned to Room 24 in the early morning hours, he found the television set smoking and opened a sliding door to let the smoke out, and placed the set on the bed, and was going to get the motel manager when Officer Frick told him to "Freeze" and then knocked him in the head with a gun. Appellant acknowledged that he might have confused the room number that Danny had rented since the officer testified he lived in Room 22, but blamed his bad memory on the lick to his head.

---

1. Appellant told Frick he was staying with a friend in Room 19.

Appellant denied he was guilty of burglary and stated he had not attempted to steal the television set. He stated the room key was taken from him and he had lost the room receipt. Appellant stated Danny was now in Florida, and he (appellant) didn't want to involve his girlfriend by giving her name.

At the conclusion of appellant's testimony on cross-examination a hearing, in the absence of the jury, was held on his objection that the prior 1969 conviction was too remote to be used for impeachment purposes. The court noted the date of the prior conviction was December 10, 1969, that appellant was received at the Department of Corrections on December 23, 1969, that appellant had been given credit on his two year sentence from July 10, 1968, and that he probably didn't serve long. The objection was overruled. In the jury's presence appellant admitted he had been convicted in 1969 of possession of marihuana, and that with the credit on his sentence he had served six months. The State concludes in its brief the release from the Department of Corrections was July 9, 1970 and that approximately 10 years and six months elapsed from release until the time of trial testimony on January 13, 1981. There was other evidence at the guilt stage offered by the State or defense which showed appellant smoked marihuana, had a drinking problem, had been arrested for public intoxication and his wife had filed charges on him.

At the penalty stage of the trial appellant on direct examination testified:

"Q   Do you feel as if you had not been drinking or had the problem with alcoholic beverages you would have committed this crime?

"A   No, sir.

"Q   Do you feel—are you sorry for the commission of this offense?

"A   Yes, sir. I am sorry."

On cross-examination the record reflects:

"Q   Mr. Gordon, are you telling this jury now that you are admitting to your guilt in this crime?

"A   Yes, sir, yes, sir, I am guilty, but not for stealing like they got it hooked up. It wasn't that way.

"Q   But you are guilty of burglary?

"A   Well, I don't know what you all call burglary, so whatever the jury came out with, twelve people, all of them ain't going to be wrong, so I was at the place at the wrong time. It was a trap set-up, that is all I can say."

It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witness. *Bustillos v. State,* 464 S.W.2d 118, 119 (Tex.Cr.App.1971), and cases there cited.

Evidence of a prior final conviction for a felony or for a misdemeanor involving moral turpitude which is not too remote is admissible to impeach a witness including a testifying defendant. *Taylor v. State,* 612 S.W.2d 566 (Tex.Cr.App.1981); *Davis v. State,* 545 S.W.2d 147 (Tex.Cr.App.1976); *Patterson v. State,* 170 Tex.Cr.R. 84, 338 S.W.2d 469 (Tex.Cr.App.1960).

While the admission of a prior conviction for impeachment is within the discretion of the trial judge, in determining whether a prior conviction is too remote it has been generally held that if the witness has been released from prison within 10 years of his trial testimony, the conviction is not too remote and evidence of the conviction is admissible. *Milligan v. State,* 554 S.W.2d 192 (Tex.Cr.App.1977); *Miller v. State,* 549 S.W.2d 402 (Tex.Cr.App.1977); *Nichols v. State,* 494 S.W.2d 830 (Tex.Cr.App.1973); *Johnson v. State,* 494 S.W.2d 870 (Tex.Cr.App.1973); *Penix v. State,* 488 S.W.2d 86 (Tex.Cr.App.1972); *Ochoa v. State,* 481 S.W.2d 847 (Tex.Cr.App.1972); *Bustillos v. State,* supra. If a prior conviction might otherwise be too remote to impeach a witness, the conviction may still be admissible if it is shown he has not reformed. *Milligan v. State,* supra; *Walker v. State,* 166 Tex.Cr.R. 297, 312 S.W.2d 666 (Tex.Cr.App. 1958); *Chandler v. State,* 155 Tex.Cr.R. 41, 229 S.W.2d 71, 230 S.W.2d 526 (Tex.Cr.App.

1950). See also *Courtney v. State,* 424 S.W.2d 440 (Tex.Cr.App.1968); *King v. State,* 425 S.W.2d 356 (Tex.Cr.App.1968).

In 62 Tex.Jur.2d, Witnesses, § 340, pp. 380–382, it is written:

"More broadly stated, the rule is that, regardless of the time elements, the facts of each case must be looked to and considered in determining the question of remoteness. *And that question is one addressed largely to the discretion of the trial court, and no hard and fast rule or period of time may be fixed. Nevertheless, the tendency of many decisions is to hold that an interval of ten years, counting from the time of release from jail if the defendant served a term of imprisonment, renders the previous conviction unavailable for impeachment,* unless from the defendant's intervening conduct it appears that he has not reformed." (Emphasis supplied.) See also 62 Tex.Jur.2d, Witnesses, § 273, p. 247.

In *Dillard v. State,* 153 Tex.Cr.R. 134, 218 S.W.2d 476 (Tex.Cr.App.1949), it was held that though expressions in earlier opinions may have left the impression that a lapse of ten years between release from custody and giving of testimony renders testimony remote, such is not the correct rule, regardless of the time element, facts of each case must be looked to and considered in determining the question of remoteness.

In *Dillard* the court wrote:

"In the light of such rule, then, the age of the accused, his conduct as reflecting non-reformation on his part, the nature of the accusation and attendant facts for which he is upon trial, and the length and severity of the penalty inflicted are to be considered."

In *Vaughn v. State,* 143 Tex.Cr.R. 150, 157 S.W.2d 894 (Tex.Cr.App.1942), it was observed that the Court of Criminal Appeals has never fixed any certain number of years as being too remote to offer prior

felony conviction for the purpose of affecting one's credibility.

In *Daugherty v. State,* 146 Tex.Cr.R. 488, 176 S.W.2d 571 (Tex.Cr.App.1943), it was stated that the clean subsequent record of the witness, over a period of 10 years or upwards, is regarded as destroying impeaching value of evidence of conviction, precise period, however, being within the discretion of the trial court, whose determination of point will not be overruled in absence of clear showing of abuse. See and cf. *Landry v. Travelers Insurance Company,* 458 S.W.2d 649 (S.Ct.Tex.1970).

The so-called 10 year rule is a rule of thumb, but it is not to be applied mechanically despite the tendency of some opinions to so indicate.

I cannot conclude that under the facts and circumstances the court abused its discretion in overruling the objection to the use of the prior conviction for impeachment on the basis of remoteness.[2]

I concur in the result reached, but cannot agree that *Brown v. State,* 617 S.W.2d 234, 236 (Tex.Cr.App.1981), is authority for the proper disposition of the question presented by this appeal. I dissent to its use. *Brown* dealt with the issue of whether it was reversible error to refuse to charge at the penalty stage of a trial on the defendant's failure to testify.

In finding reversible error for failing to so charge, the court, in passing, stated:

"However, it is further observed that if the defendant chooses to testify *at the punishment stage of the trial,* but not at the guilt-innocence stage, *Walker v. State,* Tex.Cr.App., 555 S.W.2d 454 (1977); and *Stratman v. State,* Tex.Cr. App., 436 S.W.2d 144 (1969), he may waive, for appellate purposes, evidentiary objections made during the guilt-innocence stage of the trial. This may include the right to complain on appeal of

---

**2.** The State argues that if there was error in using the prior conviction for impeachment because it was too remote it was harmless error. The State has learned since trial that the appellant had three Florida convictions in 1974 and

1975 which would prevent the prior 1969 prior conviction from being too remote because of a lack of reformation. This is an assertion in the State's brief, is not supported by the record, and cannot be considered by this court.

an in or out-of-court identification, the sufficiency of the evidence, and an illegal search and seizure. See *Downey v. State,* Tex.Cr.App., 505 S.W.2d 907 (1974); *Sims v. State,* Tex.Cr.App., 502 S.W.2d 730 (1973); *Palmer v. State,* Tex.Cr.App., 475 S.W.2d 797 (1972); *Boothe v. State,* Tex. Cr.App., 474 S.W.2d 219 (1972); and *Richardson v. State,* Tex.Cr.App., 458 S.W.2d 665 (1970)."

In the cases cited in *Brown* the defendant did not testify at the guilt stage of the trial but testified only at the penalty stage. In the instant case, the appellant testified at both stages of the trial. The impeachment of a defendant's credibility at the guilt stage of trial was not in issue in any of the cases cited in *Brown. Boothe* and *Richardson* and other cases cited dealt with the sufficiency of the evidence, where defendant had admitted guilty only at the penalty stage of the trial, and reversal for lack of sufficient evidence would mean use of his testimony at any retrial. These cases may well be questioned in light of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), particularly if a motion for instructed verdict is erroneously overruled at the guilt stage of the trial.

Further, I would note that if the appellant admitted his guilt of the alleged burglary at the penalty stage of the trial he appeared to retract it on cross-examination.

I concur in the result and dissent to the disposition of the appeal on the basis of *Brown.*

CLINTON, Judge, dissenting.

A felony offense is per se one involving moral turpitude and is, therefore, ordinarily available to impeach a witness. However, by legislative mandate a conviction for possession of marihuana, though a felony, "may not be considered a crime of moral turpitude," Article 4476–15, § 4.051(e), V.A. C.S., effective September 1, 1981; see also former § 4.05(c). Thus, the 1969 conviction of appellant for possession of marihuana

was not admissible for purposes of impeaching his testimony at the guilt stage. Coupled with its remoteness, permitting the State to use the prior conviction to attack his credibility is such an egregious error against appellant that his trial was fundamentally unfair.

Nor do I agree that the error was waived by appellant's testimony at the punishment hearing. Not only is his "admission" of guilt hopelessly equivocal, but also had it not been for the erroneous receipt of evidence about the prior conviction, appellant might not have testified on punishment.

Accordingly, I dissent.